UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SYLVIA S.,

            Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.

Case No. 3:19-cv-05067-TLF

ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of Defendant's denial of her application for disability insurance benefits.

The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the Court affirms Defendant's decision to deny benefits.

## I.    ISSUES FOR REVEW

1. Did the ALJ err in finding that Plaintiff's anxiety was a non-medically determinable impairment?
2. Did the ALJ err by not conducting a marketability evaluation of Plaintiff's transferable skills?
3. Did the ALJ properly evaluate the opinion evidence?
4. Did the ALJ err in evaluating Plaintiff's symptom testimony?

## II. BACKGROUND

On April 25, 2015, Plaintiff filed an application for disability insurance benefits, alleging a disability onset date of June 24, 2013. AR 15, 187-88. Plaintiff amended her alleged onset date to April 15, 2014. AR 15, 40. Plaintiff's application was denied upon initial administrative review and on reconsideration. AR 15, 121-23, 126-30. A hearing was held before Administrative Law Judge ("ALJ") Rebecca Jones on May 4, 2017. AR 34-96. On February 21, 2018, the ALJ issued a decision finding that Plaintiff was not disabled. AR 12-25. The Social Security Appeals Council denied Plaintiff's request for review on November 30, 2018. AR 1-6.

On January 24, 2019, Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision. Dkt. 1. Plaintiff asks this Court to reverse the ALJ's decision and to remand this case for an award of benefits or additional proceedings. Dkt. 10, p. 13.

## III. DISCUSSION

In this case, the ALJ found that Plaintiff had the following severe, medically determinable impairments: right shoulder rotator cuff tear; impingement syndrome and acromioclavicular joint arthritis status post rotator cuff repair; and lumbar spine degenerative disc disease. AR 18. The ALJ found that Plaintiff also had the non-severe impairments of gastroesophageal reflux disease ("GERD"), hypertension, and hyperlipidemia. AR 18. The ALJ found that Plaintiff's anxiety was a non-medically determinable impairment. *Id.*

Based on the limitations stemming from these impairments, the ALJ assessed Plaintiff as being able to perform a reduced range of sedentary work. AR 19. Relying on

vocational expert ("VE") testimony, the ALJ found that Plaintiff could not perform her past work as an administrative assistant. AR 22-23, 88. The ALJ found that Plaintiff had acquired skills from her past work, including computer and software operation, keyboarding, and office procedural duties. AR 23, 91-93. At step five of the sequential evaluation, the ALJ found that Plaintiff's skills would transfer to the sedentary, semi-skilled job of customer complaint clerk; therefore the ALJ determined at step five that Plaintiff was not disabled. AR 23-25, 91-92.

A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence --more than a scintilla of evidence -- in the record as a whole. *Ford v. Saul,* __ F.3d __, No. 18-35794, 2020 WL 829864 (9th Cir. February 20, 2020) at *7. The Court reviews the existing record to ascertain whether the ALJ's factual determinations are supported by substantial evidence – i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" *Biestek v. Berryhill,* 139 S.Ct. 1148, 1154 (2019).

B. Whether the ALJ erred in evaluating Plaintiff's anxiety

Plaintiff contends that the ALJ erred by finding that her anxiety was a non-medically determinable impairment. Dkt. 10, pp. 4-6. At step two of the sequential evaluation process, the ALJ determines whether the claimant "has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted); 20 C.F.R. § 404.1520(a)(4)(ii).

Under regulations in force when Plaintiff filed her application, an impairment was medically determinable only when its existence could be shown through objective medical evidence such as laboratory findings and tests done using acceptable clinical diagnostic techniques. *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) (citing Social Security Ruling ("SSR") 96-4p, 1996 WL 374187, at *1 (July 2, 1996)).

"[R]egardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings.' " *Ukolov*, 420 F.3d at 1005 (quoting SSR 96-4p, 1996 WL 374187, at *1-2).

Plaintiff stated she has a history of panic attacks dating back to the 1990s. AR 566. Plaintiff was placed on an unnamed medication that made her feel "very numb" and caused her to gain weight. *Id.* Plaintiff's panic attacks recurred after she was weaned off this medication, and Plaintiff successfully managed life stressors with self-coping mechanisms. *Id.*

During the hearing, Plaintiff testified she had four or five anxiety attacks each week, resulting in difficulty breathing, a suffocating sensation, and feelings of claustrophobia. AR 79-80. In February 2017, Plaintiff stated that she had suffered six panic attacks since the beginning of the year, and stated that her symptoms included difficulty breathing, a feeling of suffocation, racing heartbeat, and difficulty concentrating. AR 564. Plaintiff's treating Advanced Registered Nurse Practitioner ("ARNP") Ashley Jensen diagnosed Plaintiff with anxiety and prescribed lorazepam, but also referred Plaintiff for behavioral health treatment after she said she wanted to avoid

medication therapy. AR 566, 568. Plaintiff initially reported modest improvement with medication, but ultimately stopped taking lorazepam due to its side effects and was instead prescribed Vistaril and Zoloft. AR 65-66, 566, 568.

In finding Plaintiff's anxiety non-medically determinable, the ALJ reasoned that when Plaintiff first complained of panic attacks in early 2017, she stated that it was "possible" that her symptoms were the result of panic attacks. AR 18, 564. The ALJ acknowledged that Plaintiff had been diagnosed with an anxiety disorder, but found that Plaintiff's scores on two psychological questionnaires, the PHQ-9 and GAD-7, revealed "mild" anxiety symptoms. AR 18, 565. The ALJ further reasoned that Plaintiff did not seek out mental health counseling, received conservative treatment for her anxiety and mental status examinations were generally normal. AR 18.

The ALJ erred by conflating the analysis of Plaintiff's medically determinable impairments with the step two severity analysis. However, any error in doing so is harmless because Plaintiff failed to establish that her anxiety is medically determinable. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (noting that harmless error principles apply in the Social Security context).

To establish the existence of a medically determinable impairment, Social Security regulations require evidence from "acceptable medical sources," such as licensed physicians or psychologists. 20 C.F.R. § 404.1513(a) (effective Sept. 3, 2013 to Mar. 26, 2017). "Other" medical sources – such as nurse practitioners and physicians' assistants – may offer an opinion as to the severity of impairments and how they affect a claimant's ability to work, but adjudicators cannot rely upon these sources to establish

ORDER AFFIRMING DEFENDANT'S DECISION TO
DENY BENEFITS - 5

the existence of a medically determinable impairment. *See* 20 C.F.R. § 404.1513(a), (d).

At step two, Plaintiff has the burden of establishing the existence of her severe impairments. *See Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). In this case, the primary evidence concerning Plaintiff's anxiety is her own testimony and a diagnosis from Plaintiff's treating ARNP Ashley Jensen -- the only source who diagnosed Plaintiff with anxiety and prescribed medication. AR 566, 568. As such, Plaintiff has not furnished evidence from an acceptable medical source to establish the existence of an anxiety disorder.

While an ALJ has a duty to develop the record when the record is ambiguous or inadequate, the record in this case was clear -- there is scant evidence to establish Plaintiff's condition as a medically determinable, and no acceptable medical source diagnosed Plaintiff with anxiety. The ALJ did not err in finding that Plaintiff's anxiety was a non-medically determinable impairment. *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir.2001); *see also Lyons v. Colvin*, 2015 WL 3621358, at *2, 4 (W.D. Wash. June 9, 2015) (noting that an ALJ has no duty to develop the record concerning a medically determinable impairment when the only diagnosis for such an impairment came from a non-acceptable medical source such as an ARNP); *see also Ritchey v. Berryhill*, 2018 WL 4627297 at *2 (W.D. Wash. Sept. 27, 2018).

C. <u>Whether the ALJ was required to perform a marketability evaluation</u>

Plaintiff contends that the ALJ and the VE erred at steps four and five of the sequential evaluation by failing to evaluate whether Plaintiff, an individual closely

approaching retirement age, had "highly marketable" skills that would allow her to adjust to sedentary or light work. Dkt. 10, pp. 6-7.

The relevant inquiry under the version of the regulations in force when Plaintiff filed her application is not whether she possessed "highly marketable" skills, but whether the jobs cited by the VE at step five of the sequential evaluation were sufficiently similar to her previous work as to require minimal vocational adjustment.

Plaintiff relies upon an outdated version of 20 C.F.R. § 404.1563(d) which provided that an individual close to retirement age (60-64) who had a severe impairment would not be considered able to adjust to sedentary or light work "unless [she] has skills which are highly marketable." *Id.*, citing *Renner v. Heckler*, 786 F.2d 1421, 1423 (9th Cir. 1986).

The ALJ found that Plaintiff, who was born in 1955, was an individual of advanced age on her alleged onset date, and subsequently changed age category to an individual closely approaching retirement age. AR 23.

The regulation concerning transferability of skills for persons of advanced age provides that for individuals with a severe impairment that limits them to sedentary or light work, the Social Security Administration ("SSA") will find that such individuals cannot make an adjustment to other work unless they have skills that can transfer to other skilled or semiskilled work. 20 C.F.R. § 404.1568(d)(4). For individuals like Plaintiff, who are restricted to no more than sedentary work, SSA will find that such an individual has skills transferable to skilled or semiskilled sedentary work only if the sedentary work is "so similar to your previous work that you would need to make very

little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." *Id.*

During the hearing, the VE testified that Plaintiff had acquired transferrable skills from her past work as an administrative assistant, including computer and software operation, keyboarding, and office procedural duties. AR 91-93. The VE stated that Plaintiff's skills would transfer to the sedentary, semi-skilled job of customer complaint clerk and testified that Plaintiff would require very little in the way of occupational adjustment to perform this work. AR 92-93; *see also* SSR 82-41 ("[W]here job skills have universal applicability across industry lines, e.g., clerical, professional, administrative, or managerial types of jobs, transferability of skills to industries differing from past work experience can usually be accomplished with very little, if any, vocational adjustment where jobs with similar skills can be identified as being within an individual's RFC.").

The ALJ and the VE followed the applicable Social Security regulations in assessing Plaintiff's transferrable skills, and the ALJ did not err in finding that Plaintiff would require minimal vocational adjustment to perform the jobs cited by the ALJ at step five.

D. <u>Whether the ALJ erred in evaluating the medical opinion evidence</u>

Plaintiff argues that the ALJ erred in evaluating an opinion from examining orthopedist Thomas Gritzka, M.D. Dkt. 10, pp. 7-9.

In assessing an acceptable medical source – such as a medical doctor – the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

1995) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). When a treating or examining physician's opinion is contradicted, the ALJ may reject the opinion by providing "specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

Dr. Gritzka examined Plaintiff on March 8, 2017. AR 575-86. Dr. Gritzka's evaluation consisted of a clinical interview, a detailed review of Plaintiff's treatment records and diagnostic imaging evidence, and a physical examination. Based on this evaluation, Dr. Gritzka diagnosed Plaintiff with a range of musculoskeletal impairments and opined that Plaintiff was unable to work full-time, even in a sedentary job, beginning on her amended disability onset date. AR 584.

Dr. Gritzka further opined that Plaintiff could stand and walk for a combined total of two hours in an eight-hour day and lift ten pounds or less bilaterally. AR 585. Dr. Gritzka stated that Plaintiff could not reach overhead in a work setting and was limited to occasional forward flexion with no forward lifting of more than 15 pounds. *Id.* Dr. Gritzka added that Plaintiff would be able to handle and finger on an occasional basis bilaterally, would need to lie down for a minimum of one hour during the workday, and would have unspecified limitations in bending, kneeling, stooping, crouching and crawling. *Id.* Dr. Gritzka stated that if Plaintiff had attempted to perform even sedentary work after her amended onset date, she would have been absent from work three days per month or more due to her impairments. AR 585-86.

The ALJ assigned "little weight" to Dr. Gritzka's opinion, reasoning that it was: (1) the only medical opinion consistent with a finding of disability, and generally inconsistent with Plaintiff's routine and conservative treatment; (2) inconsistent with Plaintiff's self-reported activities of daily living; (3) internally inconsistent; and (4) performed at Plaintiff's request for purposes of obtaining disability benefits, which raises questions about Dr. Gritzka's objectivity.

With respect to the ALJ's first reason, evidence of conservative treatment successfully relieving symptoms can serve as a specific, legitimate reason for discounting a medical opinion. *See* 20 C.F.R. § 404.1529(c)(3)(iv) (the effectiveness of medication and treatment are relevant to the evaluation of a claimant's alleged symptoms); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (citing *Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir.2007) (stating that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment").

In treating her musculoskeletal impairments, Plaintiff lays down for between 20 and 30 minutes, three or four times per day, and uses an ice pack. AR 59. Plaintiff testified that this reduces her symptoms approximately 60 percent. *Id.* Plaintiff also attended physical therapy and uses over the counter medications such as ibuprofen. AR 55, 60, 283. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (holding that over-the-counter pain medication is "conservative treatment").

Plaintiff was also prescribed Vicodin for her back pain. AR 57, 283. Courts in the Ninth Circuit have typically found that consistent use of strong opioid analgesics such as Vicodin cannot be accurately characterized as "conservative" treatment. *Bucknell v.*

*Berryhill*, No. ED CV 18-0261 AS, 2018 WL 6198459, at *4 (C.D. Cal. Nov. 27, 2018) (unpublished) (collecting cases); *see O'Connor v. Berryhill*, 355 F. Supp. 3d 972, 985 (W.D. Wash. 2019) (collecting cases); *Hanes v. Colvin*, 651 F. App'x 703, 706 (9th Cir. 2016) (unpublished) (holding narcotic painkillers, with spinal injections and radiofrequency ablation, not conservative); *Abbott v. Astrue*, 391 F. App'x 554, 560 (7th Cir. 2010) (unpublished) (describing hydrocodone as "strong pain reliever").

Here, Plaintiff testified that she only takes Vicodin two or three times per month for pain; the ALJ did not err in finding that physical therapy, over the counter medication, and occasional use of more powerful pain medication constituted conservative treatment. *See Jesus C. v. Berryhill*, No. ED CV 17-2103-PJW, 2018 WL 5984839, at *2 (C.D. Cal. Nov. 13, 2018) (unpublished) (finding treatment was properly characterized as conservative where plaintiff was prescribed Oxycodone for two of 27 months during relevant period).

Because the ALJ provided a specific, legitimate reason for discounting Dr. Gritzka's opinion, the Court need not assess whether the ALJ's other reasons were proper, as any error would be harmless. *See Presley-Carrillo v. Berryhill*, 692 Fed. Appx. 941, 944-45 (9th Cir. 2017) (citing *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (although an ALJ erred on one reason he gave to discount a medical opinion, "this error was harmless because the ALJ gave a reason supported by the record" to discount the opinion).

E. <u>Whether the ALJ erred in evaluating Plaintiff's testimony</u>

Plaintiff contends that the ALJ did not provide clear and convincing reasons for discounting her symptom testimony. Dkt. 10, pp. 10-12.

In weighing a Plaintiff's testimony, an ALJ must use a two-step process. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the alleged symptoms. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014). If the first step is satisfied, and provided there is no evidence of malingering, the second step allows the ALJ to reject the claimant's testimony of the severity of symptoms if the ALJ makes specific findings and gives clear and convincing reasons for rejecting the claimant's testimony. *Id. See Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999).

In discounting Plaintiff's symptom testimony, the ALJ reasoned that: (1) Plaintiff's claims were inconsistent with the medical record; (2) Plaintiff's condition improved with conservative treatment; (3) Plaintiff made inconsistent statements about the reason she stopped working, and held herself out as capable of working after her alleged onset date; and (4) Plaintiff's testimony concerning her symptoms is inconsistent with her self-reported activities of daily living. AR 20-22.

With respect to the ALJ's first reason, inconsistency with objective evidence may serve as a clear and convincing reason for discounting plaintiff's testimony. *Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998). But an ALJ may not reject a claimant's subjective symptom testimony "solely because the degree of pain alleged is not supported by objective medical evidence." *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995) (internal quotation marks omitted, and emphasis added); *Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995) (applying rule to subjective complaints other than pain).

The ALJ has provided additional clear and convincing reasons for discounting Plaintiff's symptom allegations. For the reasons discussed above, the ALJ did not err in citing Plaintiff's improvement with conservative treatment as a reason for discounting her testimony. *See supra* Section IV.C; *see also* 20 C.F.R. § 404.1529(c)(3)(iv) (the effectiveness of medication and treatment are relevant to the evaluation of a claimant's alleged symptoms); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (evidence of medical treatment successfully relieving symptoms can undermine a claim of disability); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (citing *Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir.2007) (stating that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment").

With respect to the ALJ's third reason, the ALJ cited Plaintiff's statement during a consultative examination that she was laid off in April 2014 after her company moved out of state. AR 22, 407. *Wilson v. Berryhill*, 732 Fed.Appx. 504, 506 (9th Cir. 2018) (citing *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) ((finding than an ALJ did not err in relying on a claimant's statement to a physician that he left his job because he was laid off rather than because of his impairment)). Plaintiff also testified that she was actively seeking work after her alleged onset date and received unemployment benefits for six months. AR 22, 49. *See Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) (receipt of unemployment benefits can cast doubt on a claim of disability, as it shows that an applicant holds herself out as capable of working).

The ALJ has provided clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's testimony.

## CONCLUSION

Based on the foregoing analysis, the Court finds the ALJ properly determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore is AFFIRMED.

Dated this 24th day of March, 2020.

*Theresa L. Fricke*

Theresa L. Fricke
United States Magistrate Judge